IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHARLES SULLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACT. NO. 3:20-cv-0530-ECM |
| | )                    (WO) |
| | ) |
| JEFFREY MORELAND, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

## I.      INTRODUCTION

The idea "that the plaintiff is the master of the complaint" is central to federal question jurisprudence. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987).  What goes hand in hand with this understanding is a plaintiff is held responsible for strategic decisions he makes when crafting his complaint through the addition or subtraction of parties or claims.  *Id; See also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 88–91 (2005) (citing 16 J. Moore et al., Moore's Federal Practice § 107.14[2][c], p. 107–67 (3d ed. 2005)).  But the Plaintiff here requests that this Court depart from this understanding by finding no jurisdiction exists.  Charles Sullins ("Plaintiff") asks this Court to remand his suit against Jeffery Moreland ("Moreland"), his employer J & J Martin, Inc. ("J & J Martin"), and Geico Casualty Company ("Geico") (collectively "Defendants") back to state court for lack of subject matter jurisdiction.  The Plaintiff argues that the Defendants have failed to show

by the preponderance of the evidence that the required amount in controversy exists.  This is after the Plaintiff added his insurance carrier Geico for an underinsured motorist ("UIM") claim that is only triggered if the damages for his various other claims exceed $1,000,000. It seems like the Plaintiff wants to have his cake (potentially recovering against his insurer if his damages exceed $1,000,000) and eat it too (proceed in state court).   Upon consideration of the motion and for reasons that follow, the Court concludes that the motion to remand (doc. 14) is due to be DENIED.

## II.     STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and therefore possess only the power authorized by the Constitution or statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Courts should presume that a case lies outside of this limited jurisdiction, and the burden of establishing the contrary should be upon the party asserting jurisdiction. *Id.*  Although a defendant has the statutory right to remove in certain situations, the plaintiff is still the master of his claim. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  For that reason, the defendant's right to remove and the plaintiff's right to choose his forum are "not on equal footing." *Id.* Accordingly, the defendant's removal burden is a heavy one. *Id.*

A defendant may remove a case based on diversity jurisdiction under two circumstances.  First, a defendant may immediately remove a case to federal court within thirty days of receipt of the initial pleadings if it is apparent that complete diversity and the required amount in controversy exist. *See* 28 U.S.C. § 1446(b)(1) (2012) (formerly called paragraph one removal).  Second, if the amount in controversy was not apparent from the

2

initial pleading, a defendant has the opportunity to remove the case within thirty days of receiving a document later establishing the requisite amount in controversy. To prove that the amount in controversy is later discernible, the defendant must provide "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3) (formerly called paragraph 2 removal).  In this instance, "other paper" under subsection (b)(3) is "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery . . . ." § 1446(c)(3)(A).

When the plaintiff does not specify the amount in controversy, the importance of these two removal opportunities is not just that they provide defendants two discrete windows when removal is appropriate, but they also require courts to apply two different standards to determine whether federal jurisdiction exists. Under both standards, a defendant desiring to remove a case to federal court must file with a district court a "notice of removal . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders" served on the defendant. § 1446(a).  If a plaintiff does not specify damages in state court, a removing defendant must prove by the preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).  But how a court is to determine this and what evidence it is permitted to consider depend on when the case was removed to federal court.

Based on the circumstances under which the defendant removed the case to federal court, the Eleventh Circuit has set forth two different standards to evaluate whether a

3

plaintiff's claims satisfy federal diversity jurisdiction prerequisites. When the Circuit first examined this question, it taught, a "court considers the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1213 (11th Cir. 2007). Relying on the fact *Lowery* was a later § 1446(b)(3) removal, a subsequent Circuit panel cabined the document received by the plaintiff and unambiguously establish language to only apply to second paragraph removal actions. *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 763 (11th Cir. 2010). And it also cautioned courts against "[i]mplicitly reading the language into the first paragraph of that subsection, where it does not exist . . . ." *Id.*

By distinguishing first and second paragraph removal, *Pretka* identifies a less demanding path for removal under § 1446(b)(1). The Circuit explained, "[w]hen the complaint does not claim a specific amount of damages, removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Pretka*, 608 F.3d at 754 (citing *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001)). And if the jurisdictional amount is not facially apparent from the complaint, the court should look to "the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id.* The Circuit also expanded the types of evidence defendants could use to show the existence of the required amount in controversy. *Pretka*, 608 F.3d at 755 ("Defendants may introduce their own affidavits, declarations, or other documentation . . . .").

4

*Pretka* also clarifies how courts are to discern whether the required amount in controversy exists based on the notice of removal and any attendant evidence.  The *Pretka* court reframed *Lowery* as a case about "how to apply the preponderance of the evidence standard in the 'fact-free context' of that particular case." *Pretka*, 608 F.3d at 753.  In that fact-free context, the amount in controversy could only be determined "by the looking at stars" and that, of course, would be impermissible. *Id* at 753–54.  So when a moving defendant actually makes specific factual allegations and can support those allegations, a court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to aid in its determination whether the required amount in controversy exists. *Roe*, 613 F.3d at 1061–62 (citing *Pretka*, 608 F.3d at 754). Essentially, the court is not required to "suspend reality or shelve common sense" to determine whether the complaint or other documents establish the jurisdictional amount. *Pretka*, 608 F.3d at 770 (citing *Roe v. Michelin*, 637 F.Supp.2d 995, 999 (M.D. Ala. 2009)). Rather, courts are to use their "judicial experience and common sense" to evaluate whether the amount in controversy meets the jurisdictional requirement. *Roe,* 637 F.Supp.2d at 999. It is important to keep in mind "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Jones v. Novartis Pharm. Co.,* 952 F.Supp.2d 1277, 1283 (N.D. Ala. 2013) (citing *Pretka,* 608 F.3d at 754). While the court may not speculate to the exact dollar amount, it can conclude, for example, without speculating "from the egregious conduct alleged that the amount, whatever it is, far exceeds $75,000." *Pretka,* 608 F.3d at 754 (citing *Roe,* 637 F.Supp.2d at 999).  But if the defendant's evidence is insufficient, the court may not "speculate in an attempt to make

up for the notice's failings." *Pretka*, 608 F.3d at 752 (quoting *Lowery*, 483 F.3d at 1214–15).

To summarize, before determining—when not clear from the pleadings—if the amount in controversy exists, courts must first determine which of the two removal provisions apply based on when in the life of the case it was removed.  After a court determines which applies, it is to consider the evidence appropriate under each removal action.  When a defendant removes a case within the first thirty days after receipt of the initial complaint, the court may determine whether, by the preponderance of the evidence, the required amount in controversy exists based on both the initial complaint and other evidence introduced by the defendant with the notice of removal.  But if diversity jurisdiction is not apparent from the initial complaint but the case later becomes removable, the court may only evaluate "the initial complaint or a later received paper [from the plaintiff]" and the notice of removal to determine whether the amount in controversy is unambiguously established. *Lowery*, 483 F.3d at 1213. Under either standard, the court may use "deduction, inference, or other extrapolation" to determine whether the relevant evidence submitted by the removing party supports the existence of the required amount in controversy.  *Pretka*, 608 F.3d at 753.  But this ability for courts to consider the amount in controversy is limited.  When the court is presented with a notice of removal without facts or specific allegations, it may not speculate or divine "by looking at the stars" the amount in controversy. *Id.* (citing *Lowery*, 483 F.3d at 1209, 1215.).

### III.    FACTS AND PROCEDURAL HISTORY

Around midnight in December 2019, Charles Sullins was driving his car north on Interstate 85 in Macon County, Alabama.  At the same time, Jeffrey Moreland was driving an 18-wheeler also north on Interstate 85.  J & J Martin employed Moreland and owned his 18-wheeler.  Moreland's truck collided with Sullins' car.  This collision seriously injured Sullins, and his car had to be towed away from the scene. (Doc. 1-2 at 3–4).

On June 23, 2020, the Plaintiff sued Jeffrey Moreland and J & J Martin in Macon County, Alabama, for negligence; negligent hiring, training, supervision, retention; negligent entrustment; and recklessness and wantonness. (*See* Doc 1-1).  Sullins alleged various physical and emotional injuries and damages including medical and financial losses.  The Plaintiff sought compensatory and punitive damages against Moreland and J & J Martin. (Doc. 1-2 at 4–7).  A copy of the complaint and summons was served by certified mail on Defendants Moreland and J & J Martin on June 27, 2020. (Doc. 1 at 2; doc 1-3 at 44–48).

On July 17, before the Defendants answered the initial complaint, Sullins amended his complaint and joined his auto-insurer, Geico.  In his amended complaint, he brought an underinsured motorist claim against Geico for any damages over Moreland's and J & J Martin's insurance policy limit. (Doc 1-2 at 7–8).  The Plaintiff also claims Geico "agreed to pay all sums that the insured party would be legally entitled to recover as damages from the owner and operator of an uninsured and underinsured vehicle." (*Id*.).

On July 27, within thirty days of receiving the initial complaint, the Defendants removed the case to federal court based on diversity jurisdiction.  Geico consented to the

removal. (Doc. 1-5 at 2).  At the end of August, the Plaintiff filed a motion to remand the case back to state court. (Doc. 14).

## IV.   DISCUSSION

Plaintiff seeks remand of this case back to state court.  Both parties agree that complete diversity exists. (Doc. 14 at 2).  But the Plaintiff argues the Defendants failed to establish that his claim meets the $75,000 amount in controversy required by 28 U.S.C § 1332 federal diversity jurisdiction. (Doc. 14 at 2).

In his motion to remand, the Plaintiff argues the Defendants failed to prove by the preponderance of the evidence that the amount in controversy is facially apparent or unambiguously established from the Plaintiff's complaint. (Doc. 14 at 3–6).  The Plaintiff also argues his claim for underinsured motorist coverage against Geico is not relevant to the amount in controversy.  Finally, the Plaintiff rejects any argument that he must stipulate that the amount in controversy is less than the jurisdictional requirement.

To determine whether the case should be remanded back to state court, this Court will first determine whether this is a § 1446(b)(1) first paragraph or § 1446(b)(3) second paragraph removal action.  And based on that determination, the Court will then consider the evidence and apply the appropriate standard to determine if the defendant has shown the amount in controversy exists.

## A.  This case was removed based on the initial complaint under § 1446(b)(1) first paragraph removal.

There are several reasons why this case might seem removable under either removal section.  For example, in their notice of removal, the Defendants stated that the case was

removed under § 1446(b), but they did not specify under which section. (Doc. 1 at 2). The Plaintiff also used both the "facially apparent" and "unambiguously establish" language to challenge the amount in controversy. (Doc. 14 at 2–6). But perhaps most importantly, determining the removal standard was also complicated by the fact the Plaintiff filed an amended complaint in the first 30 days before there was an opportunity for the Defendants to respond to the initial complaint. Despite this lack of clarity, this Court concludes that this case was properly removed under § 1446(b)(1).

In making this determination, this Court looks to the example set by the Circuit in *Pretka*. There, the plaintiffs amended their complaint within thirty days of filing the original complaint. *Pretka*, 608 F.3d at 747. The Circuit noted that the two complaints were "materially identical except that the amended complaint was brought by all seven, instead of just three, named plaintiffs." *Id.* Even though the amended complaint "contain[ed] some additional information on the amount in controversy," the Circuit decided to accept and "refer to the amended, operative complaint as 'the complaint' . . . ." *Id.* at 747–48. Although the defendant in *Pretka* arguably removed an amended pleading, the Circuit concluded that the removal action was governed by § 1446(b)(1) "[b]ecause [the defendant] filed its notice of removal within thirty days of being served with the summons and initial complaint." *Id.* at 757. And therefore, the defendant's removal was timely because the notice of removal was filed within the specified time for first paragraph removal. *Id.* This can be contrasted to *Lowery* where the defendant removed the case three years after the plaintiffs filed the initial complaint and, therefore, had to rely on the second paragraph as the ground for removal. *Pretka*, 608 F.3d at 757 (citing *Lowery*, 483 F.3d at

9

1188).  The Circuit noted *Lowery* was "long after the closing of the 30-day removal window supplied by the first paragraph of § 1446(b)." *Id.*  In *Pretka*, it also explained the defendant "'do[es] not, and do[es] not need to, invoke the second paragraph's extended filing period.'" *Id.* at 757 (citing *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 390 (5th Cir. 2000)).[1] Because the amended complaint was removed to federal court within thirty days of the defendant's receipt of the initial complaint, the Circuit concluded that the case arose "under the first paragraph of § 1446(b)." *Pretka*, 608 F.3d at 757, 768.

In the instant case, the Plaintiff filed his original complaint in state court on June 23, 2020, and the Defendants Moreland and J & J Martin were properly served on June 27, 2020.  The Plaintiff amended his complaint on July 17, 2020 to add Geico.  Without answering either complaint, on July 27, 2020, the Defendants, with the consent of Geico, removed this case to federal court.  Because the Defendants removed the case to federal court within the thirty-day window prescribed in § 1446(b)(1), this Court finds that, consistent with *Pretka*, this case was properly removed under § 1446(b)(1).

To find otherwise would require courts to speculate the motives of removal and would incentivize opportunistic pleading on the part of plaintiffs.  Under both Alabama and federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case. *Lowery*, 483 F.3d at 1219*; Ex parte Puccio*, 923 So.2d 1069, 1072–73 (Ala. 2005).  The Supreme Court further explains, "when a plaintiff files a

---

[1] *See also Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 390 (5th Cir. 2000) ("It is wholly evident that the purpose of the second paragraph is to *extend* the time for filing notice of removal under the stated circumstance, and *not* to in any event *shorten* it to less than it would be under the first paragraph.").

complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007). Although it might appear that the amended complaint would fall under "amended pleading" in § 1447(b)(3), this understanding would create the strange outcome whereby the Defendants would have to rely on the initial complaint and the amended complaint separately to make their argument for removal. But the court in *Lowery* prohibited a similar practice. 483 F.3d at 1219 ("[i]t would be improper to bind the plaintiffs by the prayer for relief in the initial pleadings."). Similarly, a removing defendant would not be able to simply ignore the amended portion of the complaint added within the first thirty days and solely focus on the original complaint. This is supported by Circuit precedent that teaches "an amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment and is no longer a part of the pleader's averments against his adversary." *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007). This would also create perverse incentives for plaintiffs to amend pleadings within the first thirty days to subject any potential removal to the higher *Lowery* standard. Because the Plaintiff amended the complaint within thirty days after being served and the Defendants removed the complaint within that same period, this Court will consider the amended complaint under § 1446(b)(1) instead of § 1446(b)(3).

Because the suit is governed § 1446(b)(1), the Defendants are not limited to documents "generated or compiled" by the Plaintiff to unambiguously establish the jurisdictional requirement as required by *Lowery*. 483 F.3d at 1213. Instead, the Court may

11

consider the Defendants' "affidavits, declarations, or other documentation" when the amount in controversy is not facially apparent from the complaint. *Pretka*, 608 F.3d at 755.

## B. The Plaintiff's complaint and the Defendants' notice of removal more likely than not show that the requisite amount in controversy exists.

The Defendants argue the Plaintiff's complaint meets the amount in controversy requirement for three reasons.  First, the Defendants argue that the Plaintiff's alleging serious bodily injuries and destruction of his vehicle coupled with a variety of compensatory and punitive damages sufficiently establish the amount in controversy. (Doc. 1 at 5–6).  The Defendants buttress this claim by adding that the venue "is notorious for substantially large jury verdict awards to personal injury plaintiffs (particular in cases against out-of-state corporations) . . . ." (*Id.* at 5).  Next, the Defendants argue the Plaintiff's failure to stipulate to the value of his claims is evidence of the required amount in controversy. (*Id.* at 8).  Finally, the Defendants argue that by bringing an underinsured carrier claim against his insurer the Plaintiff concedes that he is seeking more than the statutory minimum insurance coverage for interstate carriers—$750,000. (*Id.* at 10).

The Court will consider these claims in turn and in totality to determine if the Defendants have shown by the preponderance of the evidence that the required amount in controversy exists.  Because a defendant or a court itself may be better situated to accurately assess the amount in controversy, the Court is not bound by the Plaintiff's representations regarding his claim, nor must it "assume that the Plaintiff is in the best position to evaluate the amount of damages sought."  *Roe*, 613 F.3d at 1061.

1.  ***The nature of the injuries and type of damages requested make it more likely that the amount in controversy exists.***

The injuries and damages sought by the Plaintiff are of a type that make it more likely that the required amount in controversy exists.  The Plaintiff sued the Defendants for negligence; negligent hiring, training, supervision, retention; negligent entrustment; and recklessness and wantoness. (Doc. 1-2 at 3–7).  The Plaintiff alleges that he suffered "serious bodily injuries," and the accident left his vehicle inoperable. (*Id.* at 3–4).  And as a result of these injuries, the Plaintiff seeks damages for the following harms: (1) serious bodily injuries; (2) other bodily injuries; (3) loss of enjoyment of life; (4) medical bills and other financial losses; (5) past, present, and future pain and suffering; and (6) past, present, and future mental anguish and emotional distress. (*Id.* at 4).  Plaintiff seeks both compensatory and punitive damages against Moreland and J & J Martin. (*Id.*).

The Defendants remind the Court that "judicial experience and common sense" would suggest that the nature of injuries coupled with unspecified punitive damages show the amount in controversy has been met. (Doc. 1 at 14).  To support this claim, the Defendants rely on several Northern District of Alabama cases that assert some variation of the premise that claims for unspecified punitive damages almost always meet the jurisdictional requirement. *Tucker v. Northbrook Indem. Co.,* 2013 WL 5961095, at *1 (N.D. Ala. Nov. 7, 2013) ("The 'legal certainty' that there could not be sufficient punitive damages to take the recovery beyond $75,000 is virtually impossible to demonstrate."); *Jones v. Hartford Fire Ins. Co.* 2013 WL 550419, at *1 (N.D. Ala. Feb. 7, 2013) ("the moment a state court plaintiff seeks unspecified damages of various kinds, such as punitive

damages . . . the claim automatically is deemed to exceed $75,000 and becomes removable

under 28 U.S.C. § 1332.");  *Smith v. State Farm Fire & Cas. Co.*, 868 F.Supp.2d 1333,

1335 (N.D. Ala. 2012) (concluding when pursuing claims against diverse parties seeking

unspecified damages of various kinds, including punitive damages, plaintiffs must formally

and expressly disclaim any entitlement to more than jurisdictional amount).

The Plaintiff responds that the Defendants put forth nothing more than conclusory

assertions about the existence of the required amount in controversy.  The Plaintiff argues

that the Court should not rely on a "conclusory allegation in the notice of removal that the

jurisdictional amount is satisfied, without setting forth the underlying facts supporting such

an assertion . . . ." *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)

(quoting *Williams*, 269 F.3d at 1319–20).  The Plaintiff supports this claim by pointing to

Eleventh Circuit precedent where the Court found the amount in controversy to be

inconclusive where a complaint pleaded only "general, special, and punitive damages for

permanent physical and mental injuries, as well as substantial medical expenses, lost

wages, and diminished earning capacity . . . ." *Williams*, 269 F.3d at 1320.  Similar to

*Williams*, the Plaintiff argues the Defendants have not shown that the amount in

controversy is facially apparent, because, to support their removal, the Defendants rely on

general, special, and punitive damages from the injuries caused by the Defendants' alleged

negligent, reckless, and wanton misconduct. (Doc. 14 at 5).  The Plaintiff concludes that

the fact that there was serious bodily injury and the vehicle was rendered inoperable is not

enough to show that the amount in controversy is facially apparent. (*Id.* at 6).

14

Although the Court does not accept the notion that a complaint with unspecified punitive damages necessarily meets the jurisdictional minimum, it does find the nature of the claims, extent of alleged damages, and the damages sought to be probative and useful to determine whether the required amount in controversy exists. As described in *Pretka*, a court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" when a removing defendant makes "factual allegations establishing jurisdiction and can support them . . . ." *Pretka*, 608 F. 3d at 754.  This case involves a collision with an 18-wheeler that resulted in "serious bodily injuries" and rendered the Plaintiff's car inoperable. (Doc. 1-2 at 3–4).  The Plaintiff correctly notes that the *Williams* court remanded when the plaintiff in that case alleged unspecified injuries and damages as a result of a fall in the Best Buy parking lot and refused to stipulate her claim was less than the jurisdictional minimum. *Williams*, 269 F.3d at 1318.  But the instant case can be distinguished from *Williams* because the Plaintiff pleaded more than conclusory statements or bare pleadings.  In *Williams*, the defendant removed the case solely because the plaintiff refused to stipulate. *Id.* at 1318, 1320.  And the defendant's notice of removal contained "no other factual allegations regarding the amount in controversy" and "did not submit any evidence concerning the amount in controversy." *Id*. at 1320.  By alleging he suffered "severe bodily injury" and the fact his car was left inoperable, the Plaintiff provided facts that go beyond the bare pleadings in *Williams*.  Although these facts might show that the amount in controversy could well exceed the statutory minimum, they alone do not make the amount in controversy facially apparent.  Because of this, the Court looks to the Defendants' notice of removal for more evidence. *Williams,* 269 F.3d at 1319.

15

**2.** ***Not stipulating to the amount in controversy requirement is persuasive but not dispositive to the existence of the amount in controversy.***

In their notice of removal, the Defendants argue the Plaintiff's failure to stipulate that the value of his claims are less than $75,000 supports the existence of the required amount in controversy.  Refusing to stipulate that the amount in controversy is less than the jurisdictional requirement is not dipositive, but it nevertheless is probative to the existence of the amount in controversy.  The Eleventh Circuit has held that "a refusal to stipulate standing *alone* does not satisfy [the defendant's] burden of proof on the jurisdictional issue." *Williams*, 269 F.3d at 1320 (emphasis added).  But this does not mean that a court may never consider a refusal to stipulate—just that it may not rely on it *alone* to conclude that the required amount in controversy exists.  Where a defendant does not rely exclusively on a refusal to stipulate to substantiate all his or her argument, a court may consider such a refusal in making its decision on whether to remand the case. *Jones v. Novartis Pharm. Co.,* 952 F.Supp.2d 1277, 1286–87 (N.D. Ala. 2013); *see also Devore v. Howmedica Osteonics Corp.,* 658 F.Supp.2d 1372, 1380 (M. D. Fla. 2009) ("[A] plaintiff's refusal to stipulate or admit that she is not seeking damages in excess of the requisite amount should be considered when assessing the amount in controversy.").

The Parties set out two diametrically opposite positions on how the Court should consider the Plaintiff's refusal to stipulate.  Plaintiff points to *Williams* to support his claim that he is not required to state that he seeks less than the jurisdictional minimum. (Doc. 14 at 5–6).  And because of this, the Court should not consider his refusal to stipulate. (*Id.* at 5–6, 8–9).  On the other hand, the Defendants again cite the string of cases from the

16

Northern District of Alabama that required plaintiffs to disclaim a recovery above the jurisdictional amount when seeking various types of unspecified damages including punitive. *See Tucker*, 2013 WL 5961095 at *1; *Jones,* 2013 WL 550419 at *1; *Smith,* 868 F.Supp.2d at 1335.  The Court considers the Plaintiff's failure to stipulate somewhere in between the parties' respective positions.

Here, the failure to stipulate is one among several reasons why the amount in controversy exists.  Unlike in *Williams*, where the defendants solely relied on a refusal to stipulate, Defendants here point to the nature of the claims, damages, the addition of the Plaintiff's underinsured carrier claim, facts about the extent of damages—although few— *in addition* to the fact that the Plaintiff refused to stipulate to less than the jurisdictional prerequisite.  Accordingly, *Williams* does not preclude the Court's consideration of the failure to stipulate when determining the amount in controversy.  But this is not to say that the Court agrees with the Defendants' contention that a failure to stipulate the amount in controversy necessarily triggers federal jurisdiction.  Instead, the Court finds that the failure to stipulate is relevant, but not dispositive, as to whether the amount in controversy is present.  The Court concludes that the Plaintiff's failure to stipulate is one factor that tends to show that the amount in controversy more likely exists.

### 3. *The Plaintiff's adding his auto insurer through an underinsured motorist claim is probative to the value of his claim.*

The Defendants argue that by seeking underinsured motorist damages from Geico, the Plaintiff "presupposes that he values his case at more than the Defendant Moreland and J & J Martin's insurance liability limits." (Doc. 1 at 10).  Federally regulated motor carriers

are statutorily mandated to have $750,000 in liability insurance,[3] and J & J Martin actually had $1,000,000 in coverage. (Doc. 1-6).  Therefore, the Defendants argue that the Plaintiff is at least seeking $750,000 in damages because underinsured coverage only applies when the Defendants' underlying insurance coverage has been exhausted. (*Id.* at 6–7, 10). Pointing to the Plaintiff's "claim for judgment for all compensatory damages and punitive damages" against Geico, the Defendants reject the Plaintiff's contention that they only sued Geico to put them on notice of their pending suit.  (Doc. 19 at 9).  The Defendants remind the Court that Alabama law does not require joining an underinsured carrier because a plaintiff may "merely provide notice to the UIM carrier of the action and the possibility of a UIM carrier claim." (*Id.* at 8).

In his motion to remand, Plaintiffs argue that the Defendants are speculating when they say adding an underinsured claim against Geico is demonstrative of the amount in controversy.   Relying on *Lowery*, the Plaintiff asserts a "document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—" must "unambiguously establish federal jurisdiction." (Doc. 14 at 6).  In addition, the Plaintiff argues that at the time of the initial and amended complaint he was not aware of the Defendant J & J Martin's policy limits and only joined Geico to put his insurer on notice of the pending litigation.

The Alabama Uninsured Motorist statute is designed to protect those who are "legally entitled to recover damages from owners or operators of uninsured motor vehicles"

---

[3] See 49 C.F.R. § 387.301(a)(1) & 387.303(b)(2).

including when limits of "insurance policies available to an injured person" are "less than the damages which the injured person is entitled to recover." Ala. Code § 32-7-23(a) & (b)(4).   In such a situation, the Supreme Court of Alabama explained, "[underinsured motorist] coverage, by definition, does not duplicate liability coverage but is coverage *in excess* of liability coverage, and is available to a claimant only after the claimant has exhausted available liability coverages." *State Farm Mut. Auto. Ins. Co. v. Motley*, 909 So.2d 806, 811 (Ala. 2005) (emphasis in original) (citing *Dillard v. Ala. Ins. Guar. Ass'n,* 601 So.2d 894, 896 (Ala. 1992)).   The Defendants are correct that "[a] plaintiff is allowed *either* to join as a party defendant his own liability insurer in a suit against the underinsured motorist *or* merely to give it [the insurance carrier] notice of the filing of the action . . . ." *Ex parte Geico Cas. Co.,* 58 So.3d 741, 743 (Ala. 2010) (emphasis in original) (citing *Lowe v. Nationwide*, 521 So.2d 1309, 1310 (Ala. 1988)).

Considering the nature of an underinsured claim and the fact that state law did not require the Plaintiff to bring a claim against his insurer, this Court finds the Plaintiff's joining Geico probative to determine whether the required amount in controversy exists. First, this Court finds it telling that the Plaintiff joined Geico when it simply could have provided notice to his insurer of the pending lawsuit.  If one is to accept the truism that the "plaintiff is the master of the complaint," the Court should take seriously the implications of the Plaintiff voluntarily adding Geico when alternative means of preserving an underinsured auto claim were available to him. If we are to take the Plaintiff at his word when he asserts "a claim for judgment for all compensatory damages and punitive damages

against" Geico, he is doing more than providing notice to his insurer by adding Geico to the case.  (Doc. 1-2 at 7–8).

Second, the Court finds it unpersuasive that the Plaintiff was not aware that J & J Martin had or was required to carry the federally mandated insurance minimum.  The Plaintiff argues that the chain of inferences required to support the Defendants' contention that he is seeking a recovery at or above the statutory threshold is "pure speculation."  (Doc. 14 at 6).  The Plaintiff argues that it would be speculative for the Court to assume that he knew "whether or not Federal statutory law required trucks/trailers on United States roadways to maintain minimum limits of liability insurance in order to have federal operating authority." (*Id.*).  He further labels as speculative that he knew "Defendant J & J Martin, Inc. was in compliance with the United States Codes of Federal Regulations minimum compulsory financial responsibility requirements of at least $750,000.00 . . . ." (*Id.*).  The Court instead finds that these are "reasonable deductions, reasonable inferences, or other reasonable extrapolations" that it can make in assessing whether the required amount in controversy exists in this case. *Roe*, 613 F.3d at 1061–62 (citing *Pretka*, 608 F.3d at 754).  The Plaintiff knew that J & J Martin was an out-of-state trucking company, so it is reasonable to conclude that he would know that the Defendant would be covered by federal trucking laws. (Doc. 1-2 at 2).  And the amount of insurance required was not a secret but was instead required by federal law.

But even with these things in mind, the Plaintiff alleges he was unaware of the Defendant J & J Martin's insurance policy limits or that the coverage would cover the Plaintiff's damages.  Even if the Court were to accept the Plaintiff's claims that he did not

know that J & J Martin had or was required to have at the time of the accident $750,000 in insurance, the Court may still consider the "affidavits, declarations, or other documentation" provided by the Defendants.  In its notice of removal, the Defendants included a declaration of the president of J & J Martin who explained that the company is an interstate motor carrier, was required by federal law to carry a minimum of $750,000 in insurance, and at the time of the incident was in compliance with federally required "minimum responsibility" by having coverage of $1,000,000. (Doc. 1-6).  With *Roe*'s admonition that "the defendant or the court itself may be better-situated to accurately assess the amount in controversy" in mind, the Court concludes that the Plaintiff should have known that Defendant J & J Martin was insured for at least $750,000.  *Roe*, 613 F.3d at 1061.  And even if he did not know, it is largely irrelevant because J & J Martin did carry the required insurance. (Doc. 1 at 10; doc. 1-6 at 4–6).  The Defendants provided enough evidence to show that they are indeed insured for well over the statutory minimum.

## C. Considering the evidence in the complaint and notice of remand, the Court concludes the amount in controversy has been established by the preponderance of evidence.

Based on the nature of the injuries described, the damages sought, the refusal to stipulate that the claim is less than $75,000, and the addition of an underinsured carrier claim, this Court concludes that the amount in controversy in this case more likely than not exceeds the jurisdictional amount. The Plaintiff argues throughout his pleadings that not one of these factors would be enough to create federal jurisdiction. But, in this case, there is not one, but multiple factors that weigh against remand.

Nevertheless, the Plaintiff implies that considering all these factors together is insufficient for a court to find that the statutory minimum exists.  Citing *Toole v. Chupp*, 456 F.Supp.2d 1218, 1222 (M.D. Ala. 2006), the Plaintiff argues the Defendants are required to show more than they already have to prove the existence of the amount in controversy. (Doc. 14 at 7–8).  In  *Toole*, the court found that the jurisdictional minimum was met when the plaintiff, in addition to alleging substantial bodily harm, lifelong pain and suffering, and adding an underinsured carrier claim, conceded he "could see a jury 'bringing back more than seventy-five thousand.'" *Toole*, 456 F.Supp.2d at 1222. However, subsequent courts have not interpreted that holding to require some sort of acknowledgement by plaintiffs that their damages exceed the jurisdictional threshold. This would fly in the face of past Circuit precedent that allows judges to make reasonable inferences and deductions about the value of the claims.  *Roe*, 613 F.3d at 1061–62 (citing *Pretka*, 608 F.3d at 754).  Although it would be helpful in this case if the Plaintiff specified what sort of damages award he is seeking, it is not required.  Even though there has been no concession by the Plaintiff that the amount in controversy exceeds the requisite amount, the nature of the injuries described, the damages sought, the refusal to stipulate that the claim is less than $75,000, and the addition of an underinsured carrier claim make it more likely than not that the amount in controversy has been met.

## V. CONCLUSION

Based on the Plaintiff's complaint and the Defendants' notice of removal, the amount in controversy more likely than not exceeds $75,000.

Therefore, for the reasons as stated, and for good cause, it is ORDERED that the Plaintiff's motion to remand (doc. 14) is DENIED.

DONE this 6th day of January 2021.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE